Opinion issued August 28, 2018



In The

# Court of Appeals

For The

# First District of Texas

————————————————

## NO. 01-17-00068-CV

————————————————

**G.R. AUTO CARE, RADITA GHEORGHE, AND
LAURENTIO GHEORGHE, Appellants**

**V.**

**NCI GROUP, INC. D/B/A MID-WEST STEEL BUILDING CO., Appellee**

On Appeal from the 190th District Court
Harris County, Texas
Trial Court Case No. 2015-35904A

*and*

## NO. 01-17-00243-CV

**G.R. AUTO CARE, RADITA GHEORGHE,**

**AND LAURENTIO GHEORGHE, Appellants**

**V.**

**PROEM DESIGN-BUILD, INC., JAKE EMERY,**
**AND KEITH MESSICK, Appellees**

**On Appeal from the 190th District Court**
**Harris County, Texas**
**Trial Court Case No. 2015-35904C**

## MEMORANDUM OPINION

This construction dispute arose after the architect and subcontractors who built a commercial building made design modifications during construction in early 2011, due to improperly sized steel components. The building's owners expressed dissatisfaction with the modifications when they were made. In the summer of 2012, the building sustained water and rust damage from leaks.

Attempts to repair the building were unsuccessful. In June 2015, G.R. Auto Care and its owners, Radita and Laurentio (Larry) Gheorghe, sued the steel component provider, NCI Group, Inc. d/b/a Mid-West Steel Building Co. ("Mid-West"), and other subcontractors, together with the architect, Proem Design-Build, and its owners, Jake Emery and Keith Messick. After the discovery period ended,

Mid-West and the Proem parties moved for summary judgment based on the applicable statute of limitations and on no-evidence grounds. The trial court granted the motions and severed the proceedings from the main case involving other defendants.

G.R. Auto challenges the summary judgments granted on its claims against Mid-West and the Proem parties. G.R. Auto contends that the trial court erred in granting summary judgment in favor of Mid-West based on the applicable statutes of limitations. If further contends that it erred in severing the summary judgment in favor of Mid-West because it was not a final judgment on its claims against Mid-West.

G.R. Auto challenges the summary judgment granted in favor of the Proem parties, contending that: (1) the trial court heard the no-evidence motion earlier than permitted under the court's docket-control order and before an adequate time for discovery had passed; (2) the trial court refused to consider G.R. Auto's summary-judgment evidence; and (3) the Proem parties' did not demonstrate that they were entitled to summary judgment. Finding no error in either judgment, we affirm.

**BACKGROUND**

*Building design and construction*

In October 2010, G.R. Auto contracted with Proem to design and construct an automotive repair facility on a site in northeast Houston. Proem contracted with Mid-West to supply metal building components, which were delivered to the construction site in January 2011.

Proem designed a two-story facility: the ground floor was planned to be a carport and automotive repair shop. The second floor was to house the business offices. The second floor featured an observation deck with a large window looking over the shop area.

Among other components, Mid-West supplied metal beams. After Mid-West delivered the beams, Larry Gheorghe discovered that the beams differed in size from those specified in Proem's design. Through discussions with Proem about the discrepancy, G.R. Auto became aware that using the beams as delivered would affect other aspects of the building's design: the second-floor ceiling would be higher, and the first-floor ceiling would be lower. The modifications made to use the noncompliant beams included relocation of the heating, ventilation, and air conditioning; a smaller second-floor observation window; and no decorative stone cladding on the first-floor carport beams.

On February 7, 2011, G.R. Auto wrote to Proem, expressing its dissatisfaction with the "deficiencies of the ceiling height/carport shortage." Later that month, Larry Gheorghe also met with a Mid-West representative about the problem.

In his summary judgment affidavit, Larry Gheorghe averred that, in July 2012, "massive amounts of water" entered through a grout line on the western wall of the second-floor office. Larry Gheorghe examined the air-conditioning unit's drainage lines on the roof. He noticed rust on the metal roofing panels below the drainage lines. He reported the water intrusion problem to Jake Emery at Proem on July 24, 2012. Proem's attempts to resolve the problem were unsuccessful, and G.R. Auto sued Proem, its owners, and its subcontractors, including Mid-West, in June 2015.

*Trial court proceedings*

After the discovery period ended, Mid-West moved for summary judgment on G.R. Auto's claims against them based on the applicable statute of limitations. The trial court granted Mid-West's motion in October 2016. G.R. Auto moved for rehearing and reconsideration of that ruling, and it sought leave to file new evidence. After the trial court denied G.R. Auto's motions, Mid-West asked the trial court to sever the case against it from the main case and enter a final judgment. The trial court granted the severance.

The Proem parties moved for summary judgment on traditional and no-evidence grounds. G.R. Auto conferred with Proem to seek postponement of the

motion's hearing date, particularly on the no-evidence grounds. Proem agreed. It reset the hearing on the traditional summary-judgment grounds and notified the trial court that it would set the no-evidence grounds for hearing on a later date. The trial court heard the motion in late October 2016.

G.R. Auto's response to Proem's summary-judgment motion relied on an omnibus filing that included affidavits, unsigned statements, and copies of email correspondence, photographs, repair estimates, and cancelled checks. The response recites "[a]ll of these exhibits are in plaintiffs' shared index of authorities, they are identified by (name / filing date / file # [sic]), they are now incorporated into this response by reference."

The trial court notified G.R. Auto that its exhibits "were filed in a confusing and disorganized manner," and warned that "[t]he Court is not obligated to read through pages of disorganized documents or documents unrelated to the issues in search of evidence which may support a pleading." It ordered G.R. Auto to supplement its response with an exhibit list. The order specified that the list be identified as corresponding to a pleading and that the exhibits be attached and labeled or identified in a reasonable manner to correlate to the list. The order expressly prohibited G.R. Auto from filing any new exhibits and declared, "No new exhibits will be considered."

G.R. Auto responded by filing an exhibit list with the exhibits stamped as a single set of consecutively-numbered pages. The list identified the exhibits by author, subject matter, and page number, but the filing did not identify whether the pages responded to a particular motion or pleading. The filing included materials that were not previously before the court and were not referenced in G.R. Auto's response.

Before the summary-judgment hearing, Proem interposed objections to G.R. Auto's exhibits, including objections to:

- the opinions of two experts, or references thereto, one not timely designated and the other for whom no sworn statement was provided;

- unsigned and unnotarized statements in Larry's name, as well as hearsay included in those statements that attempted to incorporate expert opinion;

- portions of Larry's affidavits that lacked a predicate showing that he had personal knowledge of the subject matter; and

- many exhibits that included verbiage cut and pasted from other documents, as well as copies of emails, letters, and other documents attached to Larry's affidavits and statements, based on hearsay and lack of authentication.

After the hearing, G.R. Auto filed a surreply, responding to Proem's objections and proffering still additional evidence. The trial court struck G.R. Auto's late-filed evidence. It sustained Proem's objections to G.R. Auto's evidence, and it granted summary judgment on all the Proem parties' no-evidence grounds as well as all traditional grounds, except as to Proem's statute of limitations defense. Then, after

7

signing an amended order clarifying its evidentiary rulings, the trial court signed an order severing G.R. Auto's claims against the Proem parties.

## I. Summary-Judgment Standard of Review

G.R. Auto challenges the trial court's summary judgments in favor of Mid-West and the Proem parties. We review summary judgments de novo. *See City of Richardson v. Oncor Elec. Delivery Co.*, 539 S.W.3d 252, 258 (Tex. 2018). When the trial court grants summary judgment without specifying the grounds for granting the motion, we affirm its judgment if any one of the grounds is meritorious. *Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 680 (Tex. 2017).

To prove entitlement to summary judgment on traditional grounds, the movant bears the burden of showing that no genuine issue of material fact exists and that the trial court should grant judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Oncor Elec.*, 539 S.W.3d at 258–59. To meet this burden, the movant must conclusively negate at least one essential element of each of the nonmovant's causes of action or conclusively prove all the elements of an affirmative defense. *KCM Fin. v. Bradshaw*, 457 S.W.3d 70, 79 (Tex. 2015). A matter is conclusively proved if reasonable people could not differ as to the conclusion to be drawn from the evidence. *See City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005).

If the movant meets its burden, then the burden shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment. *See Centeq*

8

*Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). Summary-judgment evidence raises a fact issue if reasonable and fair-minded jurors could differ in their conclusions in light of the evidence presented. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam). When reviewing the grounds for summary judgment, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Sommers for Ala. & Dunlavy, Ltd. v. Sandcastle Homes*, 521 S.W.3d 749, 754 (Tex. 2017).

A party may move for a no-evidence summary judgment after an adequate time for discovery has passed. TEX. R. CIV. P. 166a(i). A trial court must grant a no-evidence motion for summary judgment if the movant identifies one or more elements of a claim or defense for which the nonmovant would have the burden of proof at trial and the nonmovant produces no admissible evidence raising a genuine issue of material fact as to each challenged element. *See id.*; *Lockett v. HB Zachry Co.*, 285 S.W.3d 63, 67 (Tex. App.—Houston [1st Dist.] 2009, no pet.); *see also Essex Crane Rental Corp. v. Carter*, 371 S.W.3d 366, 383 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) (explaining that summary-judgment evidence must be presented in form that would be admissible at trial). To defeat no-evidence grounds, the nonmovant must adduce more than a scintilla of evidence raising a genuine issue of material fact as to each challenged element.

9

## II. Mid-West Summary Judgment

G.R. Auto contends that the trial court erred in granting Mid-West's motion for summary judgment based on the statute of limitations. Specifically, G.R. Auto argues that the discovery rule and Mid-West's fraudulent concealment tolled the accrual date of its causes of action.

### A. Limitations defense

The statutes of limitations exist "to compel the exercise of a right of action within a reasonable time so that the opposing party has a fair opportunity to defend while witnesses are available" and the evidence is fresh in their minds. *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex. 1990), *quoted in Am. Star Energy & Minerals Corp. v. Stowers*, 457 S.W.3d 427, 434 (Tex. 2015); *see Wagner & Brown v. Horwood*, 58 S.W.3d 732, 734 (Tex. 2001) (quoting *Computer Assocs. Int'l v. Altai*, 918 S.W.2d 453, 455 (Tex. 1996), *S.V v. R.V.*, 933 S.W.2d at 4, and *Luling Oil & Gas Co. v. Humble Oil & Ref. Co.*, 191 S.W.2d 716, 721 (Tex. 1945)).

To be entitled to summary judgment based on the statute of limitations, Mid-West was required to (1) conclusively prove that G.R. Auto's causes of action against Mid-West accrued earlier than the applicable limitations period, and (2) because the discovery rule was pleaded, conclusively negate it "by proving as a matter of law that there is no genuine issue of material fact about when the plaintiff discovered, or in the exercise of reasonable diligence should have

10

discovered the nature of its injury." *KPMG Peat Marwick v. Harrison Cty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999) (footnotes omitted). The date that a cause of action accrues is a question of law. *Seureau v. ExxonMobil*, 274 S.W.3d 206, 226 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

### 1.    Accrual date

"Generally, a cause of action accrues 'when [facts] come into existence that authorize a claimant to seek a judicial remedy,' 'when a wrongful act causes some legal injury,' or 'whenever one person may sue another.'" *Am. Star Energy*, 457 S.W.3d at 430 (quoting *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 202 (Tex. 2011)). "Once a claimant learns of a wrongful injury, the statute of limitations begins to run even if the claimant does not yet know 'the specific cause of the injury; the party responsible for it; the full extent of it; or the chances of avoiding it.'" *Gonzales v. Sw. Olshan Found. Repair Co.*, 400 S.W.3d 52, 58 (Tex. 2013) (quoting *Emerald Oil*, 348 S.W.3d at 207); *see also Emerald Oil*, 348 S.W.3d at 207 (holding that claims began to accrue when plaintiffs discovered wells on lease were improperly plugged; knowledge of this "actual or potential injury-causing conduct" applied to  additional plugged wells within lease); *Booker v. Real Homes*, 103 S.W.3d 487, 492 (Tex. App.—San Antonio 2003, pet. denied) ("Limitations do not begin when the first damage is observed or when the full extent of the damage is known, but rather when the appellants knew or should have known of the facts

11

giving rise to their cause of action."). Knowledge of the legal injury, "however slight," begins accrual of the cause of action; that knowledge triggers the claimant's duty to exercise reasonable diligence to investigate the problem. *Emerald Oil*, 348 S.W.3d at 207–09; *Seureau*, 274 S.W.3d at 226. Accrual occurs "even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred." S.*V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996); *see Childs v. Haussecker*, 974 S.W.2d 31, 36 (Tex. 1998).

## 2. Tolling doctrines

G.R. Auto invoked the discovery rule and alleged fraudulent concealment to avoid the limitations bar. The discovery rule applies in cases where the type of injury is objectively verifiable and inherently undiscoverable within the limitations period. *ExxonMobil Corp. v. Lazy R Ranch, LP*, 511 S.W.3d 538, 544 & n.18 (Tex. 2017) (citing *S.V.*, 933 S.W.2d at 6). If applicable, the discovery rule defers accrual of a cause of action until the plaintiff discovers or, in the exercise of reasonable diligence, should have discovered the nature of its injury. *Childs*, 974 S.W.2d at 40; *see Wagner & Brown*, 58 S.W.3d at 735; *see also PPG Indus. v. JMB/Houston Ctrs. Partners Ltd. P'ship*, 146 S.W.3d 79, 93 (Tex. 2004) ("[T]he discovery rule does not linger until a claimant learns of actual causes and possible cures."); *KPMG*, 988 S.W.2d at 749 (holding that "accrual occurs when the plaintiff knew or should have known of the wrongfully caused injury," not when the plaintiff knows "the specific

12

nature of each wrongful act that may have caused the injury"). The discovery rule exception is purposefully narrow. *See Shell Oil v. Ross*, 356 S.W.3d 924, 929–30 (Tex. 2011); *see also Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 313 (Tex. 2006) (explaining that the court has "restricted the discovery rule to exceptional cases to avoid defeating the purposes behind the limitations statutes") (citing *S.V.*, 933 S.W.2d at 25, and *Computer Assocs.*, 918 S.W.2d at 456–57)). Whether the rule applies is a question of law. *Credit Union v. O'Connor*, 115 S.W.3d 82, 96 (Tex. App.—San Antonio 2003, pet. denied); *Steel v. Rhone Poulenc, Inc.*, 962 S.W.2d 613, 618 (Tex. App.—Houston [1st Dist.] 1998), *aff'd*, 997 S.W.2d 217 (Tex. 1999). The court decides this question is "on a categorical rather than case-specific basis; the focus is on whether the type of injury rather than a particular injury was discoverable." *Via Net*, 211 S.W.3d at 314.

Fraudulent concealment is an equitable doctrine that may apply to extend the statute of limitations when the defendant has concealed its wrongdoing from the plaintiff. *BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 67 (Tex. 2011). Fraudulent concealment tolls limitations "because a person cannot be permitted to avoid liability for his actions by deceitfully concealing wrongdoing until limitations has run." *S.V.*, 933 S.W.2d at 6. Fraudulent concealment tolls limitations only until the plaintiff discovers the fraud or could have discovered it by exercising reasonable diligence. *Shell Oil*, 356 S.W.3d at 927; *see Emerald Oil*, 348 S.W.3d at 207 (explaining that

diligence is required when claimants have been "put on notice of the alleged harm of injury-causing actions"). Fraudulent concealment requires a showing that the defendant knew the plaintiff was in fact wronged and concealed that fact to deceive the plaintiff. *Earle v. Ratliff*, 998 S.W.2d 883, 888 (Tex. 1999), *quoted in BP Am.*, 342 S.W.3d at 67. The plaintiff has the burden to raise a fact issue for each element of fraudulent concealment. *ExxonMobil Corp.*, 511 S.W.3d at 544 & n.22 (citing *KPMG*, 988 S.W.2d at 748).

## B.  Analysis

G.R. Auto sued Mid-West for breach of contract, breach of warranty, quantum meruit, promissory estoppel, fraud, negligence, unjust enrichment, participatory liability, aiding or encouraging, and conspiracy. None of the limitations periods applicable to those claims is longer than four years. *See* TEX. CIV. PRAC. & REM. CODE § 16.003(a) (two years for negligence actions); *Id.* § 16.051 (four years for breach of contract); TEX. BUS. & COM. CODE § 2.725(a) (four years for breach of warranty); *Pepi Corp. v. Galliford*, 254 S.W.3d 457, 461 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) (four-year statute under TEX. CIV. PRAC. & REM. CODE § 16.004 applies to claims for quantum meruit); *Ambulatory Infusion Therapy Specialist, Inc. v. North Am. Adm'rs, Inc.*, 262 S.W.3d 107, 119 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (four-year statute under TEX. CIV. PRAC. & REM. CODE § 16.051 residual limitations provision applies to promissory estoppel claims);

*Emerald Oil*, 248 S.W.3d at 216 (four-year statute under TEX. CIV. PRAC. & REM. CODE § 16.004(a)(4) for fraud claim).

In granting Mid-West's motion for summary judgment, the trial court concluded that G.R. Auto's legal injury occurred—and its claims accrued—in February 2011, when G.R. Auto's letter to Proem expressed dissatisfaction with modifications in the facility's design due to Mid-West's noncompliant beams. G.R. Auto claims that the evidence shows that, though it knew that the beams caused flaws in the building at that time, knowledge of the defect did not provide notice that its use of Mid-West's beams would result in flooding damage. Thus, G.R. Auto contends, it has raised a fact issue as to whether the discovery rule should toll its claims until July 2012, when it discovered that the use of the noncompliant beams caused water intrusion.

The record is undisputed that G.R. Auto knew that the beams did not meet the original design specifications by February 2011. Even if G.R. Auto did not discover its water intrusion problem until July 2012, it had actual notice of the improperly sized beams—its legal injury—in February 2011; at that point, it had a duty to exercise reasonable diligence in investigating the nature of its injury and the extent of its damages. *See Kizer v. Meyer, Lytton, Alen & Whitaker*, 228 S.W.3d 384, 387–89 (Tex. App.—Austin 2007, no pet.); *Bayou Bend Towers Council of Co-Owners*

15

*v. Manhattan Constr. Co.*, 866 S.W.2d 740, 742 (Tex. App.—Houston [14th Dist.] 1993, writ denied).

In *Kizer*, a homeowner noticed cracks in the interior tile flooring in December 2001, caused by a missing capping slab for the foundation. 228 S.W.3d at 387. The homeowner sued the structural engineering firm that designed the foundation. *Id.* In March 2004, the homeowner discovered cracks in the exterior rock, sheetrock, and crown molding of the house. *Id.* He consulted with an engineer, who told him that other design defects in the foundation caused this cracking. *Id.* The homeowner brought a second suit against the firm, and the firm sought summary judgment on limitations grounds. *Id.* In response, the homeowner contended that while he discovered an injury in 2001 caused by the lack of a capping slab, the structural failure of the foundation, which became evident through the cracking in 2004, was a distinct injury that was not previously discoverable. *Id.* at 389.

In rejecting that contention, the Austin Court of Appeals explained that, the homeowner's knowledge of a defect in foundation's design put him on notice of potential additional damages resulting from that design, including the later distinct injuries attributable to the structural failure of the foundation. *See id.*; *see also Gonzalez*, 400 S.W.3d at 58 (holding that homeowner was on inquiry notice of foundation defects as matter of law when Olshan employee informed her that Olshan was not doing a good job, house was "messed up," and she should hire attorney);

*Bayou Bend*, 866 S.W.2d at 742 (rejecting condo owners' contention that suit for damages from leakage was not time-barred; owners were on inquiry notice in 1982 when they had leaks in garage roof, despite their failure to discover the cause of leakage problem until 1990, after window leaks occurred).

G.R. Auto relies on *PPG Industries*, but in that case the Texas Supreme Court held that the owner of an office building should have discovered a construction defect that caused water intrusion when the manufacturer replaced a quarter of the windows in response to complaints about deterioration of reflective coating. 146 S.W.3d at 93. The Court noted that, although some defective windows might be inevitable in a construction project for a 46-story office building, once PPG had replaced 3,000 windows, it was on notice of a design defect as a matter of law. *Id.* at 94. In this case, the evidence conclusively shows that G.R. Auto discovered the defects in the delivered steel and complained to Mid-West about the beams' variance from the design specifications in February 2011. G.R. Auto's knowledge of those defects placed it on inquiry notice about claims against Mid-West at that point. *See B. Mahler Interests v. DMAC Constr.*, 503 S.W.3d 43, 52 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (limitations on allegedly defective porch roof claims began to run, at latest, when plaintiff sent e-mail to general contractor questioning roof's structural integrity); *J.M. Krupar Constr. v. Rosenberg*, 95 S.W.3d 322, 329 (Tex. App.—Houston [1st Dist.] 2002, no pet.) ("Generally, in construction-defect

17

cases, limitations begin to run when an owner becomes aware of property damage.").

We hold that Mid-West conclusively established that the statutes of limitations applicable to G.R. Auto's causes of action against Mid-West began to run in February 2011, and further, that G.R. Auto failed to raise a fact issue that the discovery rule tolled the accrual date.

Invoking the fraudulent concealment doctrine, G.R. Auto next contends that limitations was tolled while the defendants made unsuccessful attempts to repair the building, because that effort induced it to refrain from filing suit. Unsuccessful remedial efforts, however, do not toll the limitations period. *See PPG Indus.*, 146 S.W.3d at 96; *see also Fightertown v. K-C Aviation*, No. 05-96-01998-CV, 1999 WL 701491, at *4 (Tex. App.—Dallas Sept. 10, 1999, pet. denied) (mem. op.) (cause of action accrued when corrosion on surface of airplane became visible a year after K-C painted it, not five months after K-C painted it a second time, when corrosion re-emerged). G.R. Auto does not identify any specific assurance by Mid-West that G.R. Auto could have justifiably relied on in delaying the filing of its suit against it. *See PPG Indus.*, 146 S.W.3d at 96–97. Because G.R. Auto failed to raise a genuine issue of material fact on its pleading of fraudulent concealment, the statutes of limitations applicable to its claims were not tolled as a matter of law. *See id.*

18

## C. Severance

G.R. Auto argues that the trial court's order severing its claims against Mid-West and entering judgment is not final because, it contends, the judgment did not dispose of G.R. Auto's request for attorney's fees under Chapter 38 of the Civil Practice and Remedies Code. To be entitled to fees under Chapter 38, a litigant must (1) prevail on a breach of contract claim, and (2) recover damages. *MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 666 (Tex. 2009). The trial court necessarily rejected G.R. Auto's request for attorney's fees when it granted summary judgment to Mid-West on G.R. Auto's claim for breach of contract.

A severance order makes an interlocutory judgment final and appealable if the judgment disposes of all claims between the parties, and not just a subset of those claims. *See Harris Cty. Flood Control Dist. v. Adam*, 66 S.W.3d 265, 266 (Tex. 2001) (per curiam) (judgment in severed cause that disposed of all claims between parties to appeal was final and appealable); *Waite v. Woodard, Hall & Primm, P.C.*, 137 S.W.3d 277, 279–80 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (judgment in severed cause that left "no remaining issues to be disposed of" between parties to appeal was final and appealable). The trial court's summary judgment disposed of all claims against Mid-West. Accordingly, we hold that the trial court's order granting a severance of the claims between G.R. Auto and Mid-West made the summary judgment in favor of Mid-West final and appealable.

19

## III. Proem Parties' Summary Judgment

In the companion appeal, G.R. Auto complains that the trial court erred in granting the Proem parties' motion for summary judgment based on no-evidence grounds and on all traditional grounds except the statute of limitations.

### A. Timing of the summary-judgment hearing

G.R. Auto first contends that the trial court erred in hearing the Proem parties' no-evidence motion on September 12, 2016 because the motion was prematurely filed according to the trial court's docket-control order. Under Texas Rule of Civil Procedure 166, a trial court may create a docket-control order, which sets deadlines to control the disposition of each phase of a case. TEX. R. CIV. P. 166(p); *J.W. Garrett & Sons, Inc. v. Snider*, 09-14-00306-CV, 2015 WL 5731291, at *4 (Tex. App.—Beaumont Oct. 1, 2015, pet. denied) (mem. op.). As with any other interlocutory order, the trial court may modify a docket-control order, either expressly or implicitly. *See, e.g.*, *Trevino v. Trevino*, 64 S.W.3d 166, 170 (Tex. App.—San Antonio 2001, no pet.) (affirming trial court's denial of plaintiffs' motion to strike defendants' motion for summary judgment filed after deadline set in docket-control order and granting summary judgment after concluding that trial court implicitly allowed late-filed motion to prevent unnecessary trial (citing *Ocean Transp. v. Greycas*, 878 S.W.2d 256, 262 (Tex. App.—Corpus Christi 1994, writ denied)); *see generally Dunagan v. Coleman*, 427 S.W.3d 552, 557 (Tex. App.—

20

Dallas 2014, no pet.) ("A trial court has the inherent right to change or modify any interlocutory order or judgment until the judgment on the merits of the case becomes final."); *Rush v. Barrios*, 56 S.W.3d 88, 98 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (same).

The trial court's docket-control order sets the following deadlines for dispositive motions and pleas:

(a) 04/14/17  If subject to an interlocutory appeal, dispositive motions or pleas must be heard by this date.

(b) 04/14/17  Summary judgment motions not subject to an interlocutory appeal must be heard by this date.

(c)      Rule 166a(i) motions may not be heard before this date.

G.R. Auto contends that the blank portion of the order corresponding to subpart (c) indicates that the deadline specified under subparts (a) and (b) applies. Our sister court considered and rejected the identical contention in *Massey v. Royall*, 14-02-01260-CV, 2004 WL 114989, at *1 (Tex. App.—Houston [14th Dist.] Jan. 27, 2004, pet. denied) (mem. op.). Construing the dispositive-motion deadline section of a docket-control order with the same format, the Fourteenth Court observed that "each of these items, (a), (b), and (c) is distinct, and the absence of a date next to item (c) indicates that no date was set." *Id.*

The docket-control order in *Massey*, like the one in this case, began with a notice to the parties that, "[i]f no date is given, the item is governed by the Texas

Rules of Civil Procedure." *See id.* Because no date was given, the Fourteenth Court concluded that Rule 166a(i) governed the filing of a no-evidence motion in that case. *Id.*

We agree with *Massey*'s interpretation of the docket-control order's no-evidence summary-judgment provision. Because the docket-control order does not specify a date, the trial court had the discretion to determine whether the motion was premature or timely under Rule 166a(i), which allows a party to move for summary judgment on no-evidence grounds "[a]fter an adequate time for discovery." TEX. R. CIV. P. 166a(1); *see also Elgohary v. Lakes on Eldridge Cmty. Ass'n*, No. 01–14–00216–CV, 2016 WL 4374918, at *5 (Tex. App.—Houston [1st Dist.] Aug. 16, 2016, no pet.) (mem. op.) (affirming no-evidence summary judgment granted three months before discovery period ended); *Thibodeaux v. Toys "R" Us–Delaware*, No. 01–12–00954–CV, 2013 WL 5885099, at *3–5 (Tex. App.—Houston [1st Dist.] Oct. 31, 2013, no pet.) (mem. op.) (trial court acted within its discretion in granting no-evidence summary judgment three weeks before close of discovery period set in docket-control order).

G.R. Auto next complains that the trial court should have allowed additional time for discovery before hearing the motion's no-evidence grounds. When a party argues it has not had an adequate opportunity for discovery before a no-evidence summary judgment hearing, that party must file an affidavit explaining the need for

further discovery or a verified motion for continuance. TEX. R. CIV. P. 166a(g); *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004). The affidavit must explain why the continuance is necessary; conclusory allegations are insufficient. *Carter v. MacFadyen*, 93 S.W.3d 307, 310 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus.*, 907 S.W.2d 517, 520–22 (Tex. 1995)).

G.R. Auto filed neither a verified motion for continuance nor an affidavit explaining the need for additional discovery. G.R. Auto's response to Proem's motion includes an objection that insufficient time had passed for adequate discovery. But that objection was resolved when G.R. Auto agreed to have the no-evidence summary-judgment motion heard on its submission date. G.R. Auto represented that the "parties have agreed to split the hearing, and response dates, of defendant's traditional and defendant's no-evidence summary judgment," so that the no-evidence grounds could be heard on a later date.

G.R. Auto's reliance on *Madison v. Williamson*, 241 S.W.3d 145 (Tex. App.—Houston [1st Dist.] 2007, pet. denied), is misplaced. *See id.* at 155 (listing nonexclusive factors for reviewing whether trial court acted within its discretion in permitting no-evidence motion to go forward). In *Madison*, we rejected a procedural challenge like G.R. Auto's, observing that the non-movant "made no effort to specify the additional evidence she needed to respond to the motion, or the reason

23

she could not obtain it during the discovery period." *Id.* Absent that required showing, we held that the trial court did not abuse its discretion in determining that adequate time for discovery had passed. *Id.* at 156.

Proem's third amended notice of submission shows that the hearing on the no-evidence grounds raised in its motion for summary judgment was postponed until late October 2016—more than four months after the discovery period ended, and after the case had been on file for over 16 months.[1] Because G.R. Auto did not seek a continuance and did not object to the actual submission date, its objection to the timing of the summary-judgment hearing is without merit. *See* TEX. R. APP. P. 33.1.

## B. Evidentiary challenges

G.R. Auto complains that the trial court erred in upholding Proem's objections to the evidence that G.R. Auto submitted with its response to the Proem parties' summary-judgment motion. The rules of evidence control the admissibility of evidence in summary-judgment proceedings; thus, we review a trial court's decision

---

[1] The docket control order required that all discovery be conducted before June 17, 2016. "A discovery period set by pretrial order should be adequate opportunity for discovery unless there is a showing to the contrary, and ordinarily a motion under paragraph (i) would be permitted after the period but not before." *See* TEX. R. CIV. P. 166a(i) cmt.; *see also Madison v. Williamson*, 241 S.W.3d 145, 155–56 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (holding that trial court did not abuse its discretion in determining adequate time for discovery had passed when, among other things, lawsuit had been pending for over one year); *McMahan v. Greenwood*, 108 S.W.3d 467, 498–99 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (same).

24

to admit or exclude evidence for abuse of discretion. *Seim v. Allstate Tex. Lloyds*, No. 17-0488, 2018 WL 3189568, * 2 (Tex. June 29, 2018). We will not overturn the judgment "[u]nless the trial court's erroneous evidentiary ruling probably caused the rendition of an improper judgment." *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 906 (Tex. 2000); *see* TEX. R. APP. P. 44.1(a)(1); *see also Comiskey v. FH Partners*, 373 S.W.3d 620, 630 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) (finding error in evidentiary ruling and explaining that it therefore would "consider the excluded testimony where appropriate in our substantive analysis but reverse only if the evidentiary error was harmful").

The rules of error preservation also apply to our consideration of objections to summary-judgment evidence. *See Seim*, 2018 WL 3189568 at *2. Proem filed written objections to G.R. Auto's evidence before the summary-judgment hearing, which the trial court granted. G.R. Auto contends that Proem should have objected to the summary-judgment evidence through special exceptions rather than in its reply to G.R. Auto's summary-judgment response, but our rules do not require a particular means of advancing written objections to the evidence. *See, e.g.*, *Barry v. Barry*, 193 S.W.3d 72, 74 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (explaining that courts look to instrument's substance, not form of title or caption, to determine its nature).

G.R. Auto's response in the trial court did not cite to legal authority supporting the admission of its evidence over Proem's objections or seek leave to supplement its response to cure the challenged defects with correctly executed affidavits or other admissible evidence.[2]   G.R. Auto likewise fails to cite to legal authority supporting its contentions here.[3]   We thus conclude that G.R. Auto has not preserved its contention that the trial court erred in sustaining Proem's objections to the evidence. *See* TEX. R. APP. P. 33.1.

## C.    No demonstration of error

G.R. Auto contends that Proem was not entitled to summary judgment on no-evidence grounds but fails to direct this court to admissible evidence in the record raising a fact issue or to pertinent legal authority to support its contention.   The Proem no-evidence grounds challenged each of the elements of the following claims against them:  implied warranty of suitability and other warranty-based claims, including implied warranty of fitness for a particular purpose and express warranty; breach of contract; quantum meruit; promissory estoppel; fraud, including fraudulent

---

[2]    G.R. Auto proffered additional evidence following the hearing, but the trial court struck it as untimely.  G.R. Auto does not challenge on appeal the trial court's orders striking its late-filed evidence.

[3]    G.R. Auto's reply brief includes new explanations and arguments concerning its proffered exhibits, but this information apparently was not before the trial court and we decline to consider it here.  *See* TEX. R. APP. P. 38.3; *Glattly v. Air Starter Components*, 332 S.W.3d 620, 641 (Tex. App.—Houston [1st Dist.] 2010, pet. denied).

misrepresentation, fraudulent inducement, and fraud by nondisclosure; negligence, including negligent misrepresentation; conspiracy; unjust enrichment; and equitable estoppel. Proem also challenged the damages as to all claims against the Proem parties on no-evidence grounds.

We hold that G.R. Auto has not demonstrated that the trial court erred in granting the no-evidence summary judgment. G.R. Auto's brief does not differentiate between the evidence before the trial court and the evidence that the court struck. In responding to a no-evidence summary judgment motion, the nonmovant bears the burden to "point out" evidence supporting each challenged element. *Johnson v. Brewer & Pritchard*, 73 S.W.3d 193, 207 (Tex. 2002) (quoting TEX. R. CIV. P. 166a(i) cmt.). G.R. Auto does not identify specific, admissible evidence which creates a genuine issue of material fact on the elements of each claim challenged in the Proem parties' motion and does not cite to any legal authority in support of its position. It therefore has failed to meet its burden. *See Chambers v. Allstate Ins.*, No. 05-15-01076-CV, 2016 WL 3208710, at *12 (Tex. App.—Dallas June 9, 2016, pet. denied) (mem. op.) (response to no-evidence motion requires more than itemizing evidence and offering general conclusions); *see also Burns v. Canales*, No. 14-04-00786-CV, 2006 WL 461518, at *6 (Tex. App.—Houston [14th Dist.] Feb. 28, 2006, pet. denied) (mem. op.) (explaining that court is not required

to search the nonmovant's evidence to determine if fact issue exists absent argument in response referring to evidence creating fact issue on challenged elements).

The trial court's order grants summary judgment as to all no-evidence grounds asserted, and G.R. Auto has not shown any error in this part of the judgment. Because the no-evidence grounds successfully dispose of all the claims that the Proem parties attack on traditional grounds, we need not consider G.R. Auto's challenge to the trial court's grant of summary judgment on the traditional grounds urged by the Proem parties.

**D.     The summary judgment properly disposes of all of G.R. Auto's claims against the Proem parties.**

G.R. Auto argues that its ninth amended petition controls the case and includes additional claims against the Proem parties not addressed in their summary-judgment motion. The record does not support this contention. The trial court's docket control order required that amendments and supplements to pleadings be filed by June 17, 2016. G.R. Auto did not file its eighth and ninth amended petitions until September 11, 2016 and October 19, 2016, respectively. It did not seek leave to amend its petition out of time for either attempted amendment, and the record does not otherwise indicate that the trial court considered them as part of the summary-judgment record. As a result, neither attempted amendment gave rise to any claims against the Proem parties that were not addressed in their summary-judgment motion.

28

Finally, G.R. Auto complains about the form of the summary judgments signed by the trial court. G.R. Auto does not cite any legal authority to support its contention that the trial court's orders were incomplete, defective, or failed to dispose of the parties and claims necessary to permit severance. Nor has it demonstrated that it objected to the form of the orders in the trial court. We hold that G.R. Auto has not preserved this challenge for our review. TEX. R. APP. P. 33.1(a)(2).

## CONCLUSION

For these reasons, we hold that the trial court did not err in granting the summary judgments in favor of Mid-West and the Proem parties. We therefore affirm the summary judgments of the trial court.

Jane Bland
Justice

Panel consists of Justices Keyes, Bland, and Massengale.

29